UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EARL R. FULLER,

               Petitioner,

v.                                  Civil No.: 2:14cv150
                                  Criminal No.: 2:11cr36

UNITED STATES OF AMERICA,

               Respondent.

## OPINION AND ORDER

This matter is before the Court on Earl R. Fuller's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. ECF No. 308. Also before the Court is Petitioner's later-filed motion seeking leave to supplement his original § 2255 motion. ECF No. 320. Having considered the briefs and record, the Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to the relief he seeks. R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a).[1] For the reasons set forth below, Petitioner's § 2255 motion and his related motion seeking leave to supplement are both **DENIED**.

---

[1] Because the Court finds that an evidentiary hearing is not warranted, the Court denies Petitioner's request (contained within his § 2255 motion) for counsel to be appointed to assist him in this matter. Cf. R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(c) (indicating that counsel must be appointed if an evidentiary hearing is conducted).

## I. Factual and Procedural Background

Petitioner and multiple co-conspirators were named in a thirty-count superseding indictment arising out of a drug trafficking conspiracy. ECF No. 92. Petitioner and two other named defendants exercised their right to a trial by jury. On September 14, 2011, at the conclusion of a seven day jury trial, the jury returned a verdict finding Petitioner guilty of seven of the eight charged felony counts. ECF No. 173. On January 31, 2012, Petitioner was sentenced to life imprisonment, the statutorily required sentence on the count charging a drug trafficking conspiracy involving five kilograms or more of cocaine. ECF No. 227.

Petitioner and the two co-defendants that proceeded to trial all appealed their convictions, and the United States Court of Appeals for the Fourth Circuit affirmed all three convictions by a joint opinion. United States v. Fuller, 498 F. App'x 330 (4th Cir. 2012). Petitioner thereafter filed the instant § 2255 motion, which is now fully briefed and ripe for review.

## II. Standard of Review

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner bears the burden of proving that

his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 661-63 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

Although a petitioner advancing new claims asserted for the first time in a § 2255 motion must generally "clear a significantly higher hurdle than would exist on direct appeal,"

United States v. Frady, 456 U.S. 152, 166 (1981), a freestanding claim of ineffective assistance of counsel is properly asserted for the first time in a § 2255 motion, see United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (citing Massaro v. United States, 538 U.S. 500, 504-06, (2003)).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that:

(1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Courts should therefore "indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to prove either of the two prongs of the Strickland test, the court need not evaluate the other prong. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. Discussion – § 2255 Motion

Petitioner's § 2255 motion and associated filings allege: (1) ineffective assistance of trial counsel for failure to object to improper juror contact and/or move for a mistrial; (2) ineffective assistance of trial counsel for failure to object to perjured testimony; (3) ineffective assistance of appellate counsel for failure to challenge the denial of Petitioner's right to represent himself; and (4) ineffective assistance of appellate counsel for failure to raise "a Remmer violation." For the reasons set forth below, all four of Petitioner's claims are **DENIED.**

6

## A. Preliminary Matter - Timeliness

The Government's brief in opposition challenges the timeliness of Petitioner's § 2255 motion, arguing that it is untimely because such motion was not filed within ninety-days of the Fourth Circuit's judgment on appeal. See Clay v. United States, 537 U.S. 522, 532 (2003) (explaining that "§ 2255's one-year limitation period starts to run" when the time for pursing certiorari expires); U.S. Supreme Ct. R. 13.1 (indicating that "a petition for a writ of certiorari . . . is timely when it is filed . . . within 90 days after entry of the judgment"). However, after his conviction was affirmed, Petitioner timely filed a petition with the Fourth Circuit seeking a rehearing. See ECF No. 287. Approximately one month later, the Fourth Circuit issued an order denying a rehearing. ECF No. 289. Supreme Court Rules expressly establish that "if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or sua sponte considers rehearing, the time to file the petition for a writ of certiorari . . . runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment." U.S. Supreme Ct. R. 13.3. Accordingly, here, because Petitioner' filed his § 2255 motion within one year and ninety days after the denial of his petition for rehearing,

his § 2255 motion is timely. See Prilliman v. United States, No. Civ. RDB-10-1802, 2011 WL 1465519, at *2 (D. Md. Apr. 15, 2011) (indicating that, pursuant to Supreme Court Rule, the petitioner's one-year § 2255 limitations period began to run ninety days after the Fourth Circuit denied his motion for a rehearing).

## B. Trial Counsel's Failure to Challenge Juror Contact

Petitioner first claims that his trial counsel was ineffective for agreeing to a stipulation, for failing to object to improper juror contact, and for failing to request a hearing or move for a mistrial on these issues. All of such arguments arise from an interaction between Government witness Clive Black ("Black") and the attorney for Samuel Lloyd ("Lloyd"), one of the co-defendants that was jointly tried with Petitioner.

According to Lloyd's attorney, Black, while waiting in line to enter the courthouse on the fifth day of trial, asked Lloyd's attorney to "tell Sammy they forced me," presumably making reference to Black's earlier trial testimony inculpating Lloyd of drug trafficking activities. Trial Tr. 847, ECF No. 206. Black was subsequently questioned by the Court, outside the presence of the jury, and he admitted talking to Lloyd's attorney while waiting in line, but denied making any statement about being forced to do anything. Id. at 1005-08. After Lloyd's attorney

heard Black's version of events, he continued to assert that Black had mentioned being forced, but agreed that Black had asked an additional question on an unrelated topic that counsel had not remembered earlier in the day when he first reported the conversation to the Court. Id. at 1008.

A review of the trial transcript reveals that, after Black shared his version of the conversation with the Court, Petitioner's counsel quickly advanced a motion seeking to preclude Black from testifying further in the case and moving to strike Black's entire trial testimony due to its unreliability. Id. at 1013-14. The Court took such matter under advisement in order to continue the presentation of evidence in the case, and indicated to counsel during a side-bar conference that the matter would be resolved the next morning. Id. at 1014.

The next morning, the Court was informed by counsel that a stipulation had been reached on such issue, and the following statement should be read to the jury: "Yesterday morning, Clive Black stated the following to court personnel: 'Tell Sammy that they forced me to do it.'" Trial Tr. 1159, ECF No. 207. Although such stipulation left unresolved the question of whether Black had made a false denial about the content of the conversation, it provided additional evidence which could be viewed as undercutting Black's credibility. See Fuller, 498 F.

9

App'x at 332 (concluding, in the opinion jointly addressing Petitioner's and his two co-defendants' direct appeal, that "[t]he stipulation was a reasonable solution that allowed the defendants to further impeach Black's testimony," and that after the stipulation was reached, there was "no error" by this Court in failing to "order a mistrial sua sponte").

In line with the Fourth Circuit's analysis on direct appeal, and in consideration of the deferential Strickland standard presuming that counsel performed within the wide range of reasonable professional conduct, this Court finds that Petitioner's counsel's agreement to the stipulation was a reasonable strategic decision because it provided additional evidence that could be used to further impeach Black's testimony. See Goins v. Angelone, 52 F. Supp. 2d 638, 663 (E.D. Va. 1999) ("The Strickland standard mandates considerable deference to trial counsel's strategic choices, whether or not those choices are ultimately successful."). Had Petitioner's counsel insisted on putting Black on the stand before the jury in an effort to prove his "false denial," the jury might have believed that Black never stated "tell Sammy they forced me," possibly concluding that he had been misheard because of his Jamaican accent. Even worse for the defense, the jury could have concluded that Lloyd's lawyer, who would likely have been a necessary witness if the

10

matter was pressed further, was willing to fabricate evidence to advance the defense.   As noted above, the fact that Lloyd's counsel's initial recounting of the brief conversation omitted a subject that he later conceded was briefly discussed must also be considered in the strategic calculus as such fact could have provided the Government the opportunity to call into question the veracity or memory of Lloyd's counsel.

The soundness of Petitioner's counsel's strategic decision to forgo such uncertainties and rely on the stipulation are thus apparent from the record, and Petitioner's hindsight attack on the reasonableness of counsel decisions lacks merit.   See United States v. Dehlinger, 740 F.3d 315, 325 (4th Cir. 2014) ("The Sixth Amendment does not provide a basis for disappointed clients to launch after-the-fact attacks on the objectively reasonable strategic decisions of their trial attorneys."); Strickland, 466 U.S. at 689 (explaining that because it is "all too easy" to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time").   Notably, if Lloyd's counsel was compelled to testify, it could have impacted the trial in any number of ways, some of which could have conceivably harmed

Petitioner's case, and such harm may not have been worth the perceived risk in light of the fact that Mr. Black had provided minimal and uncompelling evidence against Petitioner.

This Court's conclusion is no different with respect to Petitioner's assertion that his trial counsel should have requested a mistrial. See United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010) (indicating that moving for a mistrial is inherently a strategic decision and involves consideration of "numerous alternative strategies such as remaining silent, interposing an objection, requesting a curative instruction, or requesting an end to the proceeding") (internal quotation marks and citation omitted).  Petitioner argues in his § 2255 motion that at least one juror overheard the conversation on the courthouse steps, and that counsel should have either moved for a mistrial or insisted that the Court question the jurors about such matter.   However, the trial transcript reveals the reasonableness of the parties' and the Court's decision not to inquire further into whether any juror heard the exchange.

Although Petitioner highlights favorable excerpts from the trial transcript that, when considered in a vacuum, suggest that a juror might have heard something, consideration of the entire transcript reveals otherwise.  Specifically, in both the initial and later discussions of this issue on the record on day five of

trial, Lloyd's counsel indicated his confidence that no juror overheard the brief conversation, in part because he quickly cut off the conversation, recognizing that a juror was approaching the line and must have <u>seen</u> them talking.  <u>See</u> Trial Tr. 847-49, ECF No. 206 (Lloyd's counsel: "we were not in earshot of any jurors"; "nobody heard it other than me"); <u>Id.</u> at 1008-09 (Lloyd's counsel: "the juror who sits in the back row . . . with blond hair, was approaching about 25 feet behind him"; "I immediately scanned everyone around me to determine if there were jurors, and the only one I saw was the lady approaching from behind us"; <u>Id.</u> at 1012 (Lloyd's counsel: "[T]hat juror did--I mean, obviously she observed, she couldn't--well, I don't know what she could hear.  Obviously I can't speak for her.  But she was far enough away that <u>I'm confident she didn't hear it</u>.  But she did see us and was right in line behind us.") (emphasis added).  Because neither Lloyd's counsel nor Black reported that any juror contact occurred, Petitioner fails to demonstrate constitutionally deficient performance based on his counsel's failure to seek a mistrial and/or failure to insist that inquiry be made of one or more jurors.

In addition to the above analysis concluding that Petitioner fails to demonstrate constitutionally deficient performance with respect to the handling of Black's contact with Lloyd's counsel,

the Court finds that Petitioner fails to demonstrate resulting prejudice. Strickland, 466 U.S. at 692. As alluded to above, Black's testimony focused on the other co-defendants and was extremely limited as to Petitioner, with Black testifying that he only met Petitioner on a single occasion when he provided him with a (relatively) small amount of cocaine at the request of a co-conspirator. Trial Tr. 301-02, ECF No. 203. Black did not appear to know Petitioner's name and could not confidently identify him in court. Id. at 302. Moreover, the record reveals that the count in which Petitioner was charged with the drug transaction involving Black (Count 21) was the only count against Petitioner on which the jury returned a "Not Guilty" verdict. Trial Tr. 808-10, ECF No. 205; Trial Tr. 885-91, ECF No. 206; ECF No. 173. As Petitioner's counsel secured a "Not Guilty" verdict as to the drug activities for which Black provided evidence against Petitioner, her strategic decisions regarding Black were ultimately successful. Accordingly, the arguments in the pending § 2255 motion fail to demonstrate "a reasonable probability that, but for counsel's" alleged mishandling of the incident on the courthouse steps, "the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94.[2]

---

[2] Related to the above, Petitioner advances the largely conclusory assertion that he was unconstitutionally denied access to the content of the side-bar conference that immediately followed Black's testimony about his conversation with Lloyd's counsel. The Court rejects such

For the above-stated reasons, all of Petitioner's
ineffective assistance arguments regarding trial counsel's
handling of Black's contact with Lloyd's counsel are **DENIED**.

**C. Trial Counsel's Failure to Challenge Alleged Perjury**

Petitioner next claims that his trial counsel was
ineffective for failing to object to, or moving to strike, the
perjured testimony of Government witness Trenton Hawkins
("Hawkins") and/or for failing to request a mistrial based on
prosecutorial misconduct associated with the presentation of such
allegedly false testimony. Specifically, Petitioner contends
that Hawkins, at the time of his guilty plea, swore under oath in
a written "Statement of Facts"[3] that he sold cocaine only to
Black and an individual known as "Mousey," whereas Hawkins

---

claim in light of the fact that, at the outset of trial, the Court
inquired of counsel regarding the requested trial procedure, and
Petitioner's counsel confirmed in the presence of Petitioner while in
the courtroom that Petitioner was waiving his right to be present at
bench conferences. Trial Tr. 38, ECF No. 202. Moreover, even had such
waiver not occurred, and even if Petitioner's counsel made the decision
regarding the stipulation without relaying the details of the bench-
conference to Petitioner, it is "well-established that in a criminal
trial, defense counsel has the authority to manage most aspects of the
defense without first obtaining the consent of the defendant,"
including numerous tactical decisions "such as what evidence should be
introduced, what stipulations should be made, what objections should be
raised" as well as "decisions regarding a mistrial." Chapman, 593 F.3d
at 367-68 (emphasis added) (internal quotation marks and citations
omitted). Petitioner's claim that counsel was ineffective for failing
to fully involve him in the decision process on this issue therefore
fails.

[3] It is the common practice in this Court for a criminal defendant to
sign a sworn stipulation of fact referred to as a "Statement of Facts"
in conjunction with the entry of his or her guilty plea.

testified on direct at trial that he sold cocaine to Black, Mousey, and Petitioner.

As explained by the Fourth Circuit, "[a] conviction acquired through the knowing use of perjured testimony by the prosecution violates due process" regardless as to "whether the prosecution solicited testimony it knew to be false or simply allowed such testimony to pass uncorrected." United States v. White, 238 F.3d 537, 540 (4th Cir. 2001) (internal citations omitted). Here, having considered the arguments advanced by Petitioner in his § 2255 filings, the Court finds that Petitioner fails to demonstrate that the prosecutor engaged in misconduct and fails to demonstrate that his trial counsel was ineffective because she did not advance one of several suggested challenges to Hawkins' testimony.

First, Petitioner's argument regarding Hawkins' alleged pretrial sworn statement appears to incorrectly rely on Black's written Statement of Facts rather than Hawkins' Statement of Facts. Hawkins' actual statement does not identify by name the persons that Hawkins sold cocaine to, instead indicating that he sold cocaine to "various individuals in Virginia." Case No. 2:11cr9, ECF No. 30 (emphasis added). Petitioner therefore fails to demonstrate that Hawkins' trial testimony was perjurious in that it contradicted his prior sworn statement.

16

Second, even if Black's sworn Statement of Facts is considered in analyzing whether Petitioner's counsel should have argued that the Government knowingly introduced perjured testimony, Black's statement does not contradict Hawkins' trial testimony in the manner necessary to support such a challenge. While Black's Statement of Facts does expressly indicate that Hawkins sold cocaine to Black and "Mousey," it does not indicate that Hawkins sold cocaine only to Black and Mousey. Case No. 2:11cr110, ECF No. 10. Additionally, Black's Statement of Facts does not expressly indicate that sales to Black or Mousey were all direct sales, as contrasted with sales arranged through Petitioner (which is what Hawkins' claimed at trial on cross-examination). Such document's silence as to Petitioner's involvement in Hawkins' drug activities does not create a "conflict" with subsequent trial testimony that would support a motion challenging the admissibility of such testimony, but instead merely creates an evidentiary question to be resolved by the jury.

Petitioner's § 2255 filings and the record in this case, and the associated cases involving Petitioner's co-conspirators, fail to reveal prosecutorial misconduct and/or perjurious testimony. Petitioner therefore fails to demonstrate that his counsel committed any error at all, let alone an error of constitutional

17

magnitude, when she failed to seek to exclude Hawkins as a witness, failed to move to strike his testimony, or failed to request a mistrial on this issue. Strickland, 466 U.S. at 687-89; see Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (finding that counsel was not constitutionally deficient for failing to file a motion that was not likely to succeed). Alternatively, even assuming that trial counsel should have raised an objection, Petitioner fails to demonstrate a "reasonable probability" that the result of the proceeding would have been different had such argument been made. Strickland, 466 U.S. at 694. Petitioner's second claim is therefore **DENIED**.

### D. Appellate Counsel's Failure to Raise the Denial of Petitioner's Right to Self-Representation

Petitioner next asserts that his appellate counsel should have challenged this Court's pre-trial rulings/statements as improperly denying Petitioner the right to proceed pro se at trial. Immediately prior to the start of Petitioner's jury trial, the Court heard directly from Petitioner on his oral motion to terminate appointed counsel. Upon detailed inquiry, Petitioner's comments revealed that there was not a total breakdown in communication between Petitioner and his lawyer. Rather, Petitioner's comments outlined his recently developed dissatisfaction with what he perceived as counsel's disloyal efforts to continue encouraging Petitioner to plead guilty rather

18

than focusing on preparing for trial.  See United States v. Norfleet, 401 F. App'x 833, 837 (4th Cir. 2010) ("[A] disagreement over strategy and tactics . . . does not constitute a communication breakdown sufficient to warrant replacing counsel." (citing United States v. Johnson, 114 F.3d 435, 443 (4th Cir. 1997))).  After a detailed back and forth with Petitioner and his counsel, the Court determined that Petitioner's counsel's trial preparations were appropriate and sufficient, and that there was no basis to terminate her representation.  The Court then explained to Petitioner that he should refocus on cooperating with his attorney to help her provide a defense at trial, and of course, that he was free to convey to his lawyer any interest that he had in entering a plea. See Trial Tr. 5-29, ECF No. 202.

Petitioner now asserts that appellate counsel should have argued that this Court's handling of the motion to terminate counsel constituted a denial of Petitioner's constitutional right to represent himself at trial.  However, such argument plainly lacks merit, as Petitioner fails to demonstrate that such an appellate claim was "'clearly stronger than'" the several claims that were presented on direct appeal.  Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).  Notably, after repeatedly being afforded the

opportunity to directly address the Court prior to trial,
Petitioner never once indicated that he wanted to proceed pro se,
instead focusing on all of the reasons he was dissatisfied with
his current lawyer's performance and/or loyalty.  See Fields v.
Murray, 49 F.3d 1024, 1029 (4th Cir. 1995) ("[A] defendant who
desires to invoke his right to self-representation, thereby
waiving his right to counsel, must do so clearly and
unequivocally.")  (internal quotation marks and citations
omitted).  Moreover, at the conclusion of Petitioner's argument
challenging his counsel's performance, the Court inquired: "So
that's all on the motion for new counsel? To terminate counsel?
That was your motion?" and Petitioner responded: "Yes, sir."
Trial Tr. 20, ECF No. 202.

After the lengthy back and forth with Petitioner in which he
was afforded the opportunity to directly advance two oral
motions, all occurring while the jury venire was waiting to be
called into the courtroom, the Court did indicate to Petitioner
that the Court was not going to hear anything further from him.
Id. at 28-29.  However, at no point did Petitioner even allude to
the fact that he wished to proceed pro se.  See Fields, 49 F.3d
at 1029 ("The requirement that a defendant invoke his self-
representation right clearly and unequivocally . . . allow[s] the
court safely to presume that the defendant should proceed with

counsel absent an unmistakable expression by the defendant that [proceeding in such manner] is contrary to his wishes.") (citations omitted). Petitioner therefore fails to demonstrate that this Court improperly denied his unraised right to proceed without counsel, and thus clearly fails to demonstrate that appellate counsel was constitutionally deficient for failing to raise such matter on appeal.[4] Moreover, Petitioner fails to demonstrate resulting prejudice from counsel's failure to raise such claim. Petitioner's third claim is therefore **DENIED**.

### E. Appellate Counsel's Failure to Raise a "<u>Remmer</u> violation"

Similar to his claim that trial counsel provided ineffective assistance by mishandling the brief contact between Black and Lloyd's counsel, Petitioner asserts that appellate counsel was ineffective for not raising on appeal this Court's failure to conduct a "<u>Remmer</u> hearing." In <u>Remmer v. United States</u>, 347 U.S. 227 (1954), the Supreme Court held that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, <u>with a juror</u> during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively

---

[4] Petitioner likewise fails to demonstrate that his appellate counsel should have challenged this Court's failure to <u>sua sponte</u> continue the trial in order to afford Petitioner an additional opportunity to seek to retain counsel of his own choosing. Notably, even on the morning of trial, Petitioner never stated that he was capable of retaining counsel; to the contrary, his statements that morning indicated that he was not. Trial Tr. 6-7, ECF No. 202.

prejudicial."[5]  Id. at 229 (emphasis added).  The Supreme Court further indicated that a hearing should be conducted when there is improper contact with a juror and that the Government can overcome the presumption of prejudice by demonstrating that "such contact with the juror was harmless to the defendant."  Id.

Here, as discussed above, the trial transcript demonstrates that this Court took evidence on this issue during trial and that numerous clarifying questions were asked of the participants in the courthouse-steps conversation in order to sufficiently establish that the brief conversation occurred outside of the earshot of any of the jurors.  See Smith v. Phillips, 455 U.S. 209, 217 (1982) (indicating that due process requires "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen").  Thus, there was no private communication, contact, or direct or indirect tampering with a juror, and even if there was, a sufficient hearing on such matter was provided during trial.  See Barnes v. Joyner, 751 F.3d 229, 243-44 (4th Cir. 2014), cert. denied, 135 S. Ct. 2643 (2015) (explaining that while a defendant has a right to a Remmer hearing when there is a

_____

[5] In Barnes v. Joyner, 751 F.3d 229, 243 (4th Cir. 2014) cert. denied, 135 S. Ct. 2643 (2015), the Fourth Circuit recently acknowledged a circuit split regarding whether such presumption survives subsequent Supreme Court cases, but indicated that the presumption continues to apply in the Fourth Circuit.

"a credible allegation of communications or contact between a third party and a juror concerning the matter pending before the jury," such a hearing may be conducted "during trial") (emphasis added).

Moreover, even if this Court assumes, against the weight of the evidence, that a juror heard part of the conversation on the courthouse steps, the words spoken, under either speaker's account, were largely innocuous. Tellingly, outside of Black's statement that was later relayed to all of the jurors in open court pursuant to a stipulation, nothing else was said on the courthouse steps that had the potential to color the jury's interpretation of the trial evidence. Barnes, 751 F.3d at 244 (indicating that "to be entitled to the Remmer presumption and a Remmer hearing, a defendant must first establish both that an unauthorized contact was made and that it was of such a character as to reasonably draw into question the integrity of the verdict") (emphasis added). Accordingly, although it is questionable as to whether a Remmer hearing was constitutionally necessary, because this Court both took evidence on this issue and held several conferences with counsel for all parties, the Court concludes that: (1) an adequate Remmer inquiry/hearing was in fact conducted; (2) the record was sufficiently developed to demonstrate that it is highly unlikely that any juror contact

occurred; and (3) the record further reveals that any juror contact that conceivably could have occurred was "harmless to the defendant," rendering it unnecessary to directly question any jurors about such matter. Remmer, 347 U.S. at 229.

For these reasons, Petitioner fails to demonstrate that appellate counsel was constitutionally deficient for opting not to assert a Remmer violation. Bell, 236 F.3d at 164. Moreover, Petitioner fails to demonstrate resulting prejudice, as not only was there an apparent lack of juror contact, but the alleged contact (other than the statement that was the subject of the stipulation) "amounted to nothing more than innocuous interventions." Barnes, 751 F.3d at 244 (internal quotation marks and citations omitted). As Petitioner fails to satisfy either prong of the Strickland standard, his fourth ground for relief is **DENIED**.

## IV. Discussion – Motion for Leave to Amend

Petitioner's initial § 2255 motion was timely filed shortly before the expiration of the one-year limitations period set forth in 28 U.S.C. § 2255(f). Many months later, long after the expiration of the limitations period, Petitioner filed his motion for leave to "supplement" his § 2255 motion. ECF No. 320. Such latter motion was filed pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, seeking to add a new claim alleging

24

that trial counsel failed to inform Petitioner of the Government's first plea offer that would have allowed Petitioner to serve "0-20 years." Id.

As recognized by the Fourth Circuit, facially time-barred amendments to a § 2255 motion "relate back" to the original motion when "'the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading.'" United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (quoting the version of Fed. R. Civ. P. 15(c)(2) in effect at that time). However, when defining the scope of the phrase "conduct, transaction, or occurrence" as set forth in Rule 15(c), the Fourth Circuit has expressly rejected a broad interpretation that would include an entire trial, or entire sentencing proceeding. Id.; see Mayle v. Felix, 545 U.S. 644, 662-64 (2005) (similarly rejecting a broad interpretation of "conduct, transaction, or occurrence" in the context of a Rule 15(c) "relation back" argument advanced by a federal habeas petitioner).

Here, Petitioner's proposed § 2255 supplement advances a new and discrete allegation that trial counsel failed to relay a plea offer, a claim that arises out of different conduct and a separate "transaction or occurrence" than the other allegations of ineffective assistance alleged in Petitioner's original § 2255

motion. Petitioner's motion for leave to supplement is therefore **DENIED** as the proposed new claim is time-barred.[6]

Alternatively, even if Petitioner's supplement was timely, his newly asserted claim would be denied on the merits as Petitioner's newly submitted affidavit and argument in support are directly contradicted by the record in this case. The trial transcript clearly reveals that the Government never made a formal plea offer in this case that would allow Petitioner to serve any less than a twenty-year mandatory minimum term of imprisonment. See Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012) (indicating that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused") (emphasis added). Such fact was confirmed by the Government, Trial Tr. 16, 23-24, ECF No. 202, defense counsel, id. at 23, and Petitioner, id. at 17.[7] Petitioner's newly advanced conclusory assertion that the Government actually made an earlier-in-time and far more lenient plea offer fails on its face as it is belied by the

---

[6] In addition to Petitioner's failure to demonstrate that his proposed supplement "relates back" to his original § 2255 motion, Petitioner fails to advance facts demonstrating that his proposed supplement was filed within a year of when the facts supporting the claim could have been discovered through due diligence. 28 U.S.C. § 2255(f).

[7] Petitioner further stated on the record immediately prior to trial that even if he had been offered a plea with a ten-year mandatory minimum, he would not have taken it. Trial Tr. 17, ECF No. 202.

26

portion of the trial transcript that directly addresses the formal plea offers extended by the Government in this case.

For the above stated reasons, Petitioner's motion for leave to supplement is **DENIED** as it improperly attempts to advance a new and discrete claim outside of the applicable limitations period.   28 U.S.C. § 2255(f).   Alternatively, even if deemed timely, Petitioner's proposed new claim is **DENIED** on the merits as the trial transcript conclusively demonstrates that the only formal plea offer extended by the Government would have required Petitioner to serve a mandatory minimum of twenty years.

## V. CONCLUSION

In sum, Petitioner's § 2255 motion and related motion to supplement are both **DENIED**.   ECF Nos. 308, 320.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right" as to any of his claims, a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**.   28 U.S.C. § 2253(c)(2); see R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a).   If

Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, to Petitioner's former counsel, and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 14, 2015